UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| HUELER INVESTMENT SERVICES, INC. and HUELER INCOME SOLUTIONS(R), LLC | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No.: |
| v. | ) ) | |
| INCOME SOLUTIONS, LLC, ISI EDUCATION, LLC, and AARON R. HOEFT, | ) ) ) ) | |
| Defendants. | ) | |

**COMPLAINT**

Plaintiffs Hueler Investment Services, Inc. and Hueler Income Solutions (R), LLC (collectively "Hueler" or "Plaintiffs") state the following for their Complaint against Defendants Income Solutions, LLC, ISI Education, LLC, and Aaron R. Hoeft (collectively "Defendants"):

**Nature of the Action**

1.  This is an action at law and in equity for trademark infringement, cybersquatting, and unfair competition under the federal Lanham Act, codified as amended at 15 U.S.C. §§ 1051-1127, the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), and state statutory and common law, arising out of the Defendants' willful and intentional infringement of Plaintiffs' long-established and well-known INCOME SOLUTIONS mark, and for Defendants' breach of contract in failing to abide by its agreement to cease using Plaintiffs' mark.

1

## Jurisdiction and Venue

2. This Court has subject matter jurisdiction under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction of the state law claims under 28 U.S.C. § 1367.

3. This Court has personal jurisdiction over Defendants because Defendants reside in this District, are transacting business within this district, have engaged in acts or omissions within this district that have caused injury, have caused injury within this district, or have otherwise made or established contacts with this district sufficient to permit the exercise of personal jurisdiction.

4. Venue is proper in this district under 28 U.S.C. § 1391 because the Defendants are located in this district and because a substantial part of the events giving rise to the claim have occurred and are occurring in this district.

## Parties

5. Plaintiff Hueler Investment Services, Inc. is a corporation organized under the laws of the State of Minnesota with its principal place of business located in Eden Prairie, Minnesota. Hueler is the owner of the trademark and trademark registration at issue in this suit.

6. Plaintiff Hueler Income Solutions (R), LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business located in Eden Prairie, Minnesota. Hueler Income Solutions (R), LLC is an affiliate of Hueler Investment Services, Inc. authorized to use the trademark at issue in this suit.

7. Defendant Income Solutions, LLC is a limited liability company organized under the laws of the State of Missouri with its principal place of business located at 2800 Kendallwood Parkway, Suite D, Gladstone, Missouri, 64119.

8. Defendant ISI Education, LLC is either a limited liability company with its principal place of business located in Gladstone, Missouri, or a fictitious business name under which Defendant Hoeft personally conducts business from the office located at 2800 Kendallwood Parkway, Suite D, Gladstone, Missouri, 64119.

9. Defendant Aaron R. Hoeft is an individual who resides in Missouri in this District. Defendant Hoeft personally took the actions at issue in this case, and also appears personally to have done certain business under the name "ISI Education." In addition, Hoeft is the principal of Income Solutions, LLC and of the purported limited liability company ISI Education LLC, and personally directed, controlled, participated in, and carried out all of the defendants' infringement and other actions at issue herein.

## FACTUAL BACKGROUND

### Hueler and its Trademark and Service Mark Rights

10. Hueler Income Solutions and Hueler Investment Services are part of a family of companies founded and built by Kelli Hueler, starting first in 1987 with an independent data and research firm providing reporting and systems designed for the annuity and stable value marketplace. Today, its data, market research, and analytical reporting are considered the industry standard.

11.     After years of building its reputation and relationships, and seeing a need in the market, in 2004, Hueler launched a first to market, groundbreaking online platform featuring a unique automated annuity purchase system.  From the beginning, Hueler adopted the trademark INCOME SOLUTIONS for its platform and services, and since 2004, Hueler has made widespread and continuous use of the INCOME SOLUTIONS trademark throughout the United States in connection with investment and financial services and financial transaction processing and annuity services.

12.     Specifically, under the INCOME SOLUTIONS mark, Hueler provides an annuity marketplace and tools that enable individuals to invest in products that provide an income stream by enabling them to compare features of, competitively bid, and purchase annuity products.  At the incomesolutions.com website, individuals can research resources regarding supplemental income and utilize the platform to analyze, in an "apples to apples" comparison, the features and pricing of numerous investment products offered by multiple highly reputable providers that are designed to provide lifetime income to an individual.  Since Plaintiffs' website's first operation beginning in 2002, it has received hundreds of thousands of visitors.

13.     Over the years, Hueler has provided its financial investment products and services under the INCOME SOLUTIONS mark to hundreds of thousands of individuals, both through financial services institutions, such as The Vanguard Group, and through benefits programs offered by hundreds of employers around the country.  Because of its quality and reliability, the INCOME SOLUTIONS program has achieved tremendous success, having been

4

widely adopted by some of the industry's largest financial services firms, plan administrators and plan sponsors.

14. In addition to having strong common law rights in the INCOME SOLUTIONS mark as a result of its use, Hueler is also the owner of a United States trademark registration for its mark, Registration No. 2933664, issued by the United States Patent and Trademark Office on March 15, 2005. A true and correct copy of the print-out from the Patent and Trademark Office online database showing this registration is attached as Exhibit A. As a matter of law, Hueler's registration is incontestable and is conclusive evidence of the validity of Hueler's mark and of Hueler's exclusive right to use the mark in connection with the services specified in the registration.

15. Hueler has invested millions of dollars in ensuring the quality and trustworthiness of the tools and products provided under its INCOME SOLUTIONS mark. Through Hueler's substantial investment of time, money, and efforts, the public has developed trust in the INCOME SOLUTIONS platform and has come to expect that the platform and products offered through it are reliable, and of the highest quality, and that investments made through its process are safe and will, in fact, provide a secure income.

16. Hueler has also expended hundreds of thousands of dollars in extensively marketing its offerings and services throughout the country, including online and through print, email, social media, industry, business, and trade association conferences and meetings, and media appearances.

17. Because of their high quality and widespread acceptance, Hueler's INCOME SOLUTIONS brand platform and services have also received significant favorable unsolicited press and public recognition.

18. As a result of Hueler's substantial and continuous use and marketing of its INCOME SOLUTIONS Mark, and of its website and services offered in connection with it, the INCOME SOLUTIONS mark has become extremely well known to the United States public as an exclusive source identifier of Hueler's high quality reliable services, and the public has come to expect services intended to produce income for individuals that are offered under the INCOME SOLUTIONS mark to be associated with Hueler.

**Defendants' Wrongful Acts**

19. Well after Hueler's INCOME SOLUTIONS mark had become well known as a source identifier for Hueler's income-producing services, Defendants adopted and began using the exact same mark (the "Infringing Mark") for their offerings purportedly designed to produce income for individuals.

20. Defendants tout their INCOME SOLUTIONS branded products and services as "assisting individuals in their financial endeavors," and use the INCOME SOLUTIONS mark to market and sell online tools that are purportedly intended to enable individuals to provide income for themselves. In fact, Defendants use the mark to dupe unsuspecting individuals to invest substantial sums of money in useless tools that do not result in income and that have instead caused some individuals to lose their investment and be driven into debt through the requirement of greater and greater monetary investments. Indeed, Defendants' businesses have

6

received considerable public complaint and criticism and have been repeatedly reported as scams.

21.     In late 2013, Hueler learned of Defendants' use of the INCOME SOLUTIONS mark, when Hueler began receiving consumer complaints that were about Defendants and their services. Hueler's counsel wrote to Defendants, notified them of Plaintiffs' rights, and demanded that they cease use of the infringing INCOME SOLUTIONS mark. Through calls with Defendants' counsel, Plaintiffs' counsel was led to believe the infringement would cease. Moreover, Hueler heard nothing more about Defendants' business, and reasonably believed the infringement had in fact ceased.

22.     In 2015, however, Defendants apparently renewed and expanded their infringement when they began using the domain names incomesolutionslms.com and incomesolutionslms.biz for a website to market and sell their tools and services. Both domain names were registered on April 30, 2014—years after Hueler's INCOME SOLUTIONS mark became distinctive and famous.

23.     Then, in April, 2016, Hueler once again began receiving communications intended for Defendants, and Plaintiffs' counsel again contacted Defendants. In May, 2016, in a telephone call with Plaintiffs' counsel, Defendant Hoeft personally indicated to Plaintiffs' counsel that the INCOME SOLUTIONS name was not significant to him and led Plaintiffs' counsel to believe that Defendants would phase out use of the INCOME SOLUTIONS name and mark. However, Plaintiffs learned subsequently that Defendants did not phase out use of the INCOME SOLUTIONS mark when, once again in 2017, Plaintiffs again experienced

7

multiple instances of consumer confusion. Plaintiffs' counsel therefore again wrote to Defendants in May, 2017, as shown in Exhibit B, and demanded that Defendants cease all use of the Infringing Mark.

24. In response to Plaintiffs' demand, on or about May 31, 2017, through their authorized agent and attorney, Defendants expressly offered to cease using the name and mark INCOME SOLUTIONS in exchange for Plaintiffs' forbearing from taking further action and allowing Defendants a period of 90 days to change their name and mark and to cease all use of INCOME SOLUTIONS. By email dated June 2, 2017, Plaintiffs accepted Defendants' offer. The parties therefore entered a binding contract for Defendants to cease using the name and mark INCOME SOLUTIONS, in exchange for Plaintiffs' agreement to allow Defendants to phase out their use over a period of three months.

25. Three months since June 2, 2017 have now passed. As promised, Plaintiffs have forborne from taking action against Defendants, and allowed Defendants the three month period to phase out their use. Plaintiffs have thus fully performed under the contract. Defendants, however, have failed and refused to cease use of the name and mark, as illustrated by the facts that Defendants have not changed the LLC name, and Defendants' offerings are still available under the INCOME SOLUTIONS marks (see Exhibits C and D attached hereto). Defendants have thus breached the parties' contract, causing additional damage to Plaintiffs.

26. Defendants' mark is confusingly similar to Plaintiffs' mark because it is identical to Plaintiffs' mark. Moreover, both parties offer services and online tools through which individual consumers make investments in order to generate lifetime income. In

8

US2008 13237898 1

Case 4:17-cv-00768-HFS   Document 1   Filed 09/13/17   Page 8 of 18

addition, Defendants market their products and services to consumers through channels that overlap with Plaintiffs' marketing channels, including online, through social media, and through business conferences. Due to the similarity of marks, services, and marketing channels, Defendants' use of INCOME SOLUTIONS is likely to cause consumers to be confused that the parties are associated or that Defendants' products are offered or authorized by Hueler.

27. Defendants' use of the INCOME SOLUTIONS mark is not only likely to cause confusion, it has in fact generated considerable actual confusion, with numerous individuals contacting Plaintiffs to complain about Defendants' deceitful and fraudulent practices, to demand their money back, and mistakenly to direct to Plaintiffs notifications of claims that are intended for Defendants.

28. Defendants' use of a mark that is confusingly similar to Hueler's INCOME SOLUTIONS Mark deceives the public, causes irreparable harm and damage to Hueler, particularly in light of the public's negative perception of Defendants and their business, products, and services and it unlawfully generates income for Defendants.

29. As a matter of law, Defendants were charged with knowledge of Hueler's rights in the INCOME SOLUTIONS mark at the time when Defendants first adopted their Infringing Mark because of Hueler's trademark registration that had been previously issued by the United States Patent and Trademark Office and published as a public record.

9

US2008 13237898 1

Case 4:17-cv-00768-HFS   Document 1   Filed 09/13/17   Page 9 of 18

30. In addition, since at least late fall, 2013, since Defendants first received notice from Plaintiffs' counsel, Defendants have had actual knowledge of Hueler's trademark rights and registration.

31. Despite knowing of Hueler's rights, Defendants have continued using the Infringing Mark.

32. Defendants, therefore, are intentionally and willfully infringing on Hueler's rights.

## COUNT I
## FEDERAL TRADEMARK AND SERVICE MARK INFRINGEMENT

33. Hueler repeats and incorporates by reference the allegations contained in Paragraphs 1 through 32 as if set forth fully herein.

34. Defendants have used and promoted the Infringing Mark in connection with the offering of their services. Defendants' unauthorized use of their identical imitation of Hueler's registered INCOME SOLUTIONS Mark is causing and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' INCOME SOLUTIONS business and services are affiliated, connected, or associated with Hueler or have the sponsorship, endorsement, or approval of Hueler, all in violation of 15 U.S.C. § 1114.

35. Defendants' unauthorized use of confusingly similar imitations of Hueler's registered INCOME SOLUTIONS Mark, notwithstanding its knowledge of Hueler's ownership of the INCOME SOLUTIONS Mark, demonstrates an intentional, willful, and bad faith intent to trade on the goodwill of Hueler's INCOME SOLUTIONS Mark and to cause confusion, deception, and mistake in the minds of Hueler's customers and potential customers

10

to the great and irreparable injury of Hueler. Defendants have acted knowingly and have been unjustly enriched thereby.

36. Because Defendants' conduct is causing and is likely to cause substantial injury to the public and to Hueler, Hueler is entitled to injunctive relief, and to recover Defendants' trebled profits associated with the infringement, Hueler's costs, and Hueler's reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT II
## FEDERAL UNFAIR COMPETITION

37. Hueler repeats and incorporates by reference the allegations contained in Paragraphs 1 through 32 as if set forth fully herein.

38. Defendants' use of confusingly similar imitations of Hueler's INCOME SOLUTIONS Mark is causing and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' business is affiliated, connected, or associated with Hueler or has the sponsorship, endorsement, or approval of Hueler, in violation of 15 U.S.C. § 1125(a).

39. Defendants' actions demonstrate an intentional, willful, and bad faith intent to trade on Hueler's goodwill and to cause confusion, deception, and mistake in the minds of Hueler's customers and potential customers by implying a nonexistent affiliation or relationship between Defendants and Hueler to the great and irreparable injury of Hueler.

40. Because Defendants' unfair competition is causing and is likely to cause substantial injury to the public and to Hueler, Hueler is entitled to injunctive relief, and to

recover Defendants' trebled profits associated with the infringement, Hueler's costs, and Hueler's reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1116 and 1117.

## COUNT III
## <u>VIOLATION OF THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT</u>

41. Hueler repeats and incorporates by reference the allegations contained in Paragraphs 1 through 32 as if set forth fully herein.

42. By registering and using the incomesolutionslms.com and incomesolutionslms.biz domain names (the "Infringing Domain Names"), Defendants have registered, trafficked in, and used a domain name that is confusingly similar to Hueler's INCOME SOLUTIONS Mark. Defendants registered and have used the Infringing Domain Names with the bad faith intent of profiting unlawfully from Hueler's INCOME SOLUTIONS Mark.

43. Defendants registered and are using the Infringing Domain Names with the intent to divert consumers from Hueler's online locations to their website accessible through the Infringing Domain Names and with the bad faith intent to profit from Plaintiffs' mark by creating a likelihood of confusion as to source, sponsorship, affiliation, or endorsement of the sites.

44. Defendants have operated their site with the intent to profit from the use of the Infringing Domain Names and the consequent confusion of internet users.

45. Defendants' actions constitute cyberpiracy in violation of 15 U.S.C. § 1125(d).

46. The unauthorized registration and use of the Infringing Domain Names has caused and unless enjoined, Defendants' registration and continued use of the Infringing Domain Names will continue to cause, irreparable injury to Hueler and to the goodwill associated with Hueler's INCOME SOLUTIONS Mark.

47. Because Defendants' infringing conduct is causing and is likely to cause substantial injury to the public and to Hueler, Hueler is entitled to injunctive relief, to obtain a transfer of the Infringing Domain Names, and to recover either statutory damages of $100,000 per Infringing Domain Name under 15 U.S.C. § 1117(d), or Defendants' trebled profits, together with Hueler's costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## COUNT IV
## COMMON LAW INFRINGEMENT AND UNFAIR COMPETITION

48. Hueler repeats and incorporates by reference the allegations contained in Paragraphs 1 through 32 as if set forth fully herein.

49. Defendants have used confusingly similar imitations of Hueler's INCOME SOLUTIONS Mark with full knowledge of Hueler's rights to the mark and with the willful and calculated purpose of trading upon Hueler's established goodwill and business reputation, and in a manner calculated to imply false sponsorship of or approval by Hueler, for the purpose of misleading and deceiving the public.

50. Defendants have used confusingly similar imitations of Hueler's electronic URL address, with full knowledge of Hueler's rights, and with the willful and calculated purpose of trading upon Hueler's established goodwill and business reputation, and in a manner calculated

13

to imply false sponsorship of or approval, by Hueler, for the purpose of misleading and deceiving the public.

51. Defendants' conduct constitutes infringement of Hueler's common law rights to the INCOME SOLUTIONS Mark and has damaged and will continue to damage irreparably Hueler's goodwill and reputation unless enjoined by this Court.

52. Independent of their liability for common law infringement, Defendants also engaged in unfair competition under the common law of Missouri and the other states in which it has engaged in its activities through its reliance on consumer mistakes and confusion, and its deliberate efforts to poach upon Hueler's goodwill.

## COUNT V
## BREACH OF CONTRACT

53. Hueler repeats and incorporates by reference the allegations contained in Paragraphs 1 through 32 as if set forth fully herein.

54. Defendants offered to cease using the mark in consideration of Plaintiffs' forbearance from taking further action and allowing Defendants to continue using Plaintiffs' mark for three months. Plaintiffs accepted Defendants' offer. Defendants thus agreed to be legally bound to, and to abide by, a valid and enforceable agreement.

55. Plaintiffs have performed, and are in compliance with, all of their obligations and duties under the parties' agreement. Defendants have received the consideration supporting their agreement.

56. Defendants have materially breached the parties' agreement by continuing to use the INCOME SOLUTIONS name and mark after the three month period.

57. As a direct and proximate result of Defendants' material breach, Plaintiffs have been damaged in an amount that is not readily determinable and cannot be adequately compensated at law, and Defendants have been unjustly enriched by reason of Defendants' material and ongoing breach despite Plaintiffs' full performance of their obligations. Plaintiffs, therefore, are entitled to specific performance of the contract, requiring Defendants to perform their obligations to cease use of INCOME SOLUTIONS as a business name, social media user name, mark, domain name, or in any other source identifying manner.

## **PRAYER FOR RELIEF**

WHEREFORE, Hueler prays:

1. That Defendants, their partners, agents, employees, successors, assignees, and all persons in active concert or participation with Defendants, be permanently enjoined and restrained from:

   a) using the Infringing Mark and any trademark, company name, domain name, or social media user name that includes "income" and "solutions" or is confusingly similar to Hueler's INCOME SOLUTIONS Mark;

   b) engaging in any other conduct which will cause, or is likely to cause, confusion, mistake, deception, or misunderstanding as to the affiliation, connection, association, origin, sponsorship, or approval of Defendants' online businesses or services with or by Hueler;

c) otherwise infringing upon Hueler's INCOME SOLUTIONS Mark or unfairly competing with Hueler in any manner whatsoever; and

2. That Defendants be ordered to transfer and assign to Hueler or its designee the Infringing Domain Names and that the registrar for the Infringing Domain Names be directed to effectuate the transfer.

3. That an accounting be ordered and judgment be rendered against Defendants for all profits received from the sale or provision of products or services directly or indirectly in connection with, or advertised or promoted in any manner, utilizing the Infringing Domain Names or confusingly similar imitations of Hueler's INCOME SOLUTIONS Mark.

4. That Hueler recover its actual damages.

5. That the award of actual damages or disgorged profits from Defendants' infringement, unfair competition, and false designation of origin of products and services be trebled.

6. That Defendants be ordered to pay statutory damages of $100,000 per domain name under 15 U.S.C. § 1125(d) for the Infringing Domain Names.

7. That Defendants be required to deliver up for destruction all advertising and promotional materials, labels, cartons, brochures, business stationary, calling cards, information sheets, posters, signs, and any and all other printed or graphic materials of any type, including the software, plates, molds, or other means of producing the materials, which bear references to confusingly similar imitations of Hueler's INCOME SOLUTIONS Mark, or to the Infringing Domain Names.

16

8. That Defendants be directed to file with the Court and serve on Hueler, within thirty (30) days after entry of a final injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

9. That Hueler be awarded its costs in connection with this suit, including reasonable attorneys' fees and expenses.

10. That the Court enter an order of specific performance requiring Defendants to perform their obligations in accordance with the parties' contract and to cease all use of INCOME SOLUTIONS as a name, mark, or source identifier for Defendants or their products or services.

11. That Hueler have such other and further relief as the Court may deem just and proper.

Date: September 13, 2017

Respectfully submitted,

*/s/ Edward D. Greim*

Edward D. Greim (Mo. Bar #54034)
GRAVES GARRETT LLC
1100 Main Street, Suite 2700
Kansas City, Missouri 64105
Phone: (816) 256-4144
Email: edgreim@gravesgarrett.com

Of Counsel:

Judith A. Powell
Georgia Bar No. 586125
Jennifer Fairbairn Deal
Georgia Bar No. 940527
KILPATRICK STOCKTON LLP
1100 Peachtree Street
Suite 2800
Atlanta, Georgia 30309
(404) 815-6500 (telephone)
(404) 815-6555 (facsimile)

Paul S. Jacobsen
Minnesota Bar No. 159335
Jacobsen Law, PLC
16118 Birchwood Lane
Brainerd, MN 56401
Phone: (218) 829-1726
Fax: (218) 828-8266

            Attorneys for Plaintiffs